### In re WELLS' WILL.

(Supreme Court, Appellate Division, Third Department. November 21, 1899.)

REVIEW—WILL CONTEST—INCAPACITY OF TESTATRIX.

    Where it is apparent, on an appeal from a decree admitting to probate a will contested on the ground of the testatrix's incapacity, that the decision was made more to do what the surrogate considered justice between the parties than to determine the testatrix's mental condition, the decree will be set aside, and the case remanded for a jury trial, as required by Code Civ. Proc. § 2588.

Appeal from surrogate's court, Saratoga county.

In the matter of the probate of the last will and testament of Huldah G. Wells, deceased. From a decree admitting the same to probate, John I. Wells appeals. Reversed, and trial by jury directed.

John I. Wells and Huldah G. Wells were married, and lived together as husband and wife, about 50 years. John I. Wells was the owner of a farm, with a house and other farm buildings upon it. A portion of this farm, consisting of about 40 acres, upon which the buildings were located, he conveyed to his wife, Huldah G. Wells, retaining the remaining portion of the farm for himself. This 40 acres, with the buildings, seems to be the only property possessed by her. Some years before the death of Huldah G. Wells she and her husband, John I. Wells, made reciprocal wills, by which each bequeathed to the other all his or her real and personal property for life, with power to the executor to pay all the legatee's debts and funeral expenses. The wills were exactly alike, with the exception of the necessary change of names. In 1894, Huldah G. Wells made another will,—the one in question,—by which she devised and bequeathed to her daughter, Anna R. Betts, all her property, real and personal, revoking all former wills made by her. This second will was made without the knowledge of her husband, and all knowledge of it was withheld from him until after her death. This last will was offered for probate by the daughter, Anna R. Betts, and its probate contested upon the ground of undue influence and want of capacity of the testatrix to make a will. Evidence was given to prove that for some time prior to the making of such will the testatrix was suffering from paresis, was sick and decrepit, and without sufficient knowledge, understanding. and mental capacity to make a will. The surrogate admitted such will to probate, and from such decree this appeal is taken.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Thomas Spratt and George E. Van Kennan, for appellant.

Fred. J. Merriman, for respondent.

HERRICK, J. I desire to call attention to the fact that the same relief that is sought by the appellant by this appeal can be obtained by him under section 2653a of the Code of Civil Procedure. In re Austin, 35 App. Div. 278, 55 N. Y. Supp. 52. But perhaps that fact does not relieve us from passing upon such cases when they are regularly brought before us on appeal.

The evidence in this case as to the mental condition of the testatrix at the time of the execution of the instrument offered for probate is conflicting, and perhaps, under ordinary circumstances, it would not be proper for us to reverse the decision of the surrogate upon such evidence; but it seems to be manifest, from reading the surrogate's opinion, that, when he came to the examination and weighing of the conflicting evidence in this case, he had a wrong conception of his duty in the premises, and he decides the case upon what he considers the nearest approach to justice as between the father and daughter, rather than upon the question as to whether in fact the testatrix was competent to make a will.

The surrogate, after reciting that this is a controversy in which father and daughter are arrayed against each other, says:

"As is usual in such quarrels, there is more bitterness than between persons not of kindred blood. From all the circumstances of the case, I am fully persuaded that right and justice demand that the husband should have the possession and use of the real estate affected by the will proposed for probate

during his natural life, and that thereafter it should pass to the daughter, unincumbered by any act of the husband and father. This result, because of the estrangement of the parties, cannot be reached. If the will proposed is admitted to probate, it is quite probable that the husband and father will not be permitted to occupy or use the premises. If probate be denied to this will, a previous will gives the use thereof to the husband and father, and makes it liable for the payment of his debts. From the feeling manifested and expressed by the father against the daughter on the trial before us, I am fully satisfied that he would make sure that sufficient liabilities against him should be created to wholly deprive the daughter of any right or interest in the premises. I held the case under consideration for months, hoping that time would remove the bitterness of feeling, and that a compromise might be effected which would secure to each the rights above indicated. From what took place between the attorneys of the respective parties in my court, I am satisfied that such result was prevented by the refusal of the father to consent to any arrangement which would secure to the daughter any certainty of ever deriving any benefit from the property. The husband and father being 82 or 83 years of age, the value of a life estate to him would be about 15 per cent. of the value of the property, and the other 85 per cent., under the view of what justice and right requires, as above indicated, should pass to the daughter. It therefore becomes the duty of the court to make such decision in the matter, as may be permitted from the evidence and the law of the case, as will come nearest to what is considered to be just and right. This view would require that the proposed will be admitted to probate, and that the husband and father be by this operation deprived of the small interest that, by the rule of right and justice above stated, he should have, rather than, by a refusal to probate the will, to deprive the daughter of her larger interest."

And he concludes thus:

"The evidence as to the capacity of the deceased to execute the will being conflicting, it is my duty to make such findings thereon as will subserve the interests of justice, and this, because of the evident bias on the part of most of the witnesses offered by the contestant, I am able to do without violating any rule of law for the weighing of evidence."

Without discussing or criticising these views of the surrogate, it is perfectly apparent that he was governed by the fact that admitting the will to probate would only deprive the husband of 15 per cent. of the value of the property, while refusing to admit it to probate would deprive the daughter of 85 per cent. of its value, and that justice and right required that such 85 per cent. should pass to the daughter. Such decision was made for the purpose of securing to the daughter a very much greater value than that which the father would be deprived of, and such decision was made to insure what he considered justice as between the parties, rather than to determine what was the testatrix's mental condition at the time when she made the will. Under such circumstances I feel that we are not called upon, in this case, to give the weight that we ordinarily do to the decisions of a trial court upon questions of fact. I have examined the evidence with considerable care, and think that the interests of justice require that this case should be reviewed in the manner required by the Code (section 2588, Code Civ. Proc.). I refrain from discussing the evidence, and from giving my views thereon, so that upon a new trial the parties will be neither embarrassed nor benefited, nor the deliberations of the jury affected, by the views of this court upon the questions of fact involved. The decree of the surrogate is hereby reversed, and a trial directed by jury, pursuant to section 2588 of the Code of Civil Procedure, of the question of fact arising between the

parties. The order of reversal to be settled before Mr. Justice HER-RICK. All concur, except PUTNAM, J., not voting; MERWIN, J., in result.

Decree of the surrogate reversed, and a trial directed by jury, pursuant to section 2588 of the Code of Civil Procedure, of the question of fact arising between the parties. Order to be settled before Mr. Justice HERRICK. Costs to abide the event.